**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL NO. 02-45-JBC**
**CIVIL ACTION NO. 07-156-JBC**

**UNITED STATES OF AMERICA**                                                                    **Plaintiff**

   **v.**

**GREGORY SULLIVAN**                                                                          **Defendant**

**REPORT AND RECOMMENDATION**

Defendant Gregory Sullivan has filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence" and an amended version of the same document.  (Docs. 239 & 247.)

He is currently incarcerated in a federal penitentiary in Beaumont, Texas, serving 572 months,

having been convicted by a jury of all fourteen counts of a superseding indictment:  two counts of

armed bank robbery, in violation of 18 U.S.C. §  2113(a) and (d); two counts of use of a firearm

during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and, ten

counts of bank robbery, in violation of 18 U.S.C. § 2113(a).  The United States has filed a response

opposing the motion.  (Doc. 259.)  Defendant Sullivan filed a fifty-page reply memorandum,

accompanied by numerous exhibits. (Doc. 265.)  The motion is fully briefed and ripe for decision;

it has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and

for a report and recommendation.

Factual Background

Between December of 1999 and June of 2002, a string of bank and credit union robberies

took place in northern Kentucky.  During the investigation of the last of these robberies, of the

1

Heritage Bank in Fort Wright, evidence collected implicated Defendant Sullivan in that robbery.[1]

Having learned of the earlier robberies, investigators interviewed eyewitnesses, fifteen of whom

ultimately identified Defendant Sullivan from one of two photographic arrays.[2]  In addition, officers

obtained and executed a search warrant for Sullivan's wife's vehicle, in which they found various

items of clothing, sunglasses, carpet fiber, financial records, and currency.  Sullivan was arrested

and indicted for twelve robberies that yielded a total of $107,425.[3]

Defense counsel was appointed for Defendant Sullivan and immediately began filing pretrial

motions; one of these was a motion to suppress the pretrial identifications made by witnesses.  At

the evidentiary hearing on the motion to suppress, two officers who created the photographic arrays

and showed them to witnesses testified to the procedures used.  Fifteen witnesses – bank employees,

customers, and bystanders – testified that they picked out Defendant Sullivan's photo without any

pressure or prompting from the officers.[4]  Different witnesses focused on different aspects of the

---

[1]The bank manager recognized the type of vehicle driven by the robber and later identified a photograph of Sullivan's wife's vehicle.  A fingerprint left by the robber matched Sullivan's.  Bait money came back to the bank through deposits linked to Sullivan.  Surveillance video showed, and eyewitnesses described, the robber wearing a baseball hat like the uniform hat issued to Sullivan's son.  *U.S. v. Sullivan*, 431 F.3d 976, 978-79 (6th Cir. 2005).

[2]Only one of the eyewitnesses identified Defendant Sullivan from a photographic spread prior to his arrest in July of 2002, according to the dates on the exhibits.

[3]The facts in this paragraph were summarized from the Sixth Circuit opinion.  *See id.*

[4]Of these fifteen, five identified Defendant Sullivan from Government Exhibit #2; one identified him from Government Exhibit #1; eight identified him from Government Exhibit #4. At the suppression hearing, however, only Government Exhibits #1 and #2 were shown to the witnesses; as Exhibits #1 and #4 contain the same six pictures, with only slight differences in size and tone, this disparity was of no consequence.

photograph they chose: two mentioned blue eyes[5]; one said the suspect did not have facial hair when he saw him in May of 2002; one said she recognized the face shape and nose in the photograph; another remembered the facial structure; yet another mentioned the eyes and the sides of the haircut; but the majority stated no reasons for picking a particular photograph.[6]   The testimony was so consistent and credible that no transcript was ordered of the evidentiary hearing on the motion. The undersigned recommended that the motion to suppress be denied; no objections were filed, and the district court judge adopted that recommendation.

Defense counsel requested, and was granted, funds to employ experts on fingerprint evidence and eyewitness testimony.[7] Two *Daubert* hearings were held, and counsel won the right to present expert opinion testimony on the subject of eyewitness identification at trial, but did not succeed in keeping out the government's expert testimony about latent fingerprints. Counsel also filed a motion in limine to prevent the government from mentioning prior convictions, crimes, acts, or wrongs. A few days prior to trial, counsel filed a motion to withdraw, because Defendant Sullivan had "fired" him, but the motion was withdrawn on the first day of trial.[8]

An eight-day jury trial took place in February of 2003. Day five began with the district court judge denying a *pro se* motion to dismiss defense counsel and ended with the charging conference; during that conference, defense counsel unsuccessfully argued for an instruction saying that missing

---

[5]A third mentioned blue eyes when testifying about his description of the robber to police, but not in connection with his choice from the photographic array.

[6]These facts are taken from the Report and Recommendation, Doc. 51.

[7]Most of the sealed documents requested by Defendant Sullivan contain these requests, or the orders granting them, which were filed under seal pursuant to 18 U.S.C. § 3006A(e)(1).

[8]Defendant Sullivan was twice asked whether he wanted counsel to withdraw and replied, "No, Your Honor."  He then volunteered, "We have got that straightened out."  Doc. 194, p. 3.

"robbery identification kits" – descriptions written out by witnesses immediately after certain robberies and given to law enforcement officers – should be presumed to be "against the Government's interest." *See* Docs.116 and 198, pp. 101-05. Also on that day, despite having had more than two hours to confer with defense counsel about testifying, Defendant Sullivan could not decide; consequently, counsel decided for him and did not put him on the stand. When the trial reconvened several days later, however, Defendant Sullivan did testify.[9] He then filed another *pro se* motion, this time asking to deliver his own closing argument; the motion was denied. The jury got the case in the morning of the eighth day and returned its verdict, guilty on all counts, within six hours.

The following month, March of 2003, Defendant Sullivan began filing *pro se* motions requesting a new trial, the preservation of evidence, and a new defense attorney, all of which were denied. Trial counsel then refiled all of the motions for Defendant Sullivan. The motion for a new trial, and a motion requesting a hearing regarding the need for a new trial, were denied. However, the motions for preservation of evidence and substitution of counsel were granted. By June, Defendant Sullivan was represented by the attorney who would take him through his sentencing and appeal.[10] This attorney, who will be referred to here as appellate counsel, filed numerous motions and requested several continuances of sentencing, which were granted. In addition, appellate

---

[9]Counsel attempted to simply allow Defendant Sullivan to tell his story in his words, but the court would not permit such an open-ended mode of questioning. So, counsel asked of each charged robbery whether Defendant Sullivan had committed it, and Defendant Sullivan answered that he did not. On cross examination, he was asked of each eyewitness whether that person was wrong in identifying him, and he replied that they were.

[10]After trial counsel was permitted to withdraw, another attorney was appointed but was soon found to have a conflict of interest. Nothing that this interim counsel did during his short representation of Defendant Sullivan is relevant to the issues raised by the § 2255 motion.

counsel filed affidavits from two persons who stated that Defendant Sullivan was at their home working on their pool from 8:30 a.m. until 5:30 p.m. on June 11, 2003.[11]  The United States countered with an affidavit of the case agent, who interviewed the two affiants and averred that they told him the affidavits they signed were not correct; the United States requested a hearing and an opportunity to present the testimony of the two persons.  No hearing was held, the motion for new trial was denied, and Defendant Sullivan was sentenced on September 11, 2003.  Appellate counsel filed a timely notice of appeal.

The United States requested permission to take depositions of the two affiants mentioned above; appellate counsel opposed the request, which was denied by another district court judge.  In July of 2003, while the appeal was still pending, Defendant Sullivan, acting *pro se*, sent a letter to the trial court, which it construed as a motion for a new trial.  The United States opposed that motion and filed one of its own, asking to supplement the record with both handwritten statements and affidavits from the two individuals whose affidavits appellate counsel had filed earlier.  The motion to supplement was granted, but the motion for a new trial was denied, due to the pendency of the appeal.  Undeterred, Defendant Sullivan filed another motion for a new trial, which was denied.  Appellate counsel filed a 28 U.S.C. § 2255 motion, which was dismissed without prejudice as being premature.

The Sixth Circuit affirmed Defendant Sullivan's convictions in December of 2005, holding that the district court did not err by denying his motion to substitute counsel on the fifth day of trial, that there was sufficient evidence to convict him of Counts 8 through 10, that the lower courts

---

[11]Later documents clarify that the year should have been 2002, providing Defendant Sullivan with an alibi for the last robbery of which he was convicted, the Heritage Bank robbery.

committed no egregious error in denying his motion to suppress, and that he did not make out a *Brady* violation with respect to either the fiber and hair samples or the eyewitness identification forms. Finally, noting that the record was not adequate to address claims of inadequacy of trial counsel, the court declined to reach that issue.

Returning to the district court, Defendant Sullivan requested an extension of time to file his § 2255 motion, which was granted. However, he next filed a motion to have both Assistant United States Attorneys and the case agent "removed for fraud and tampering with evidence," which was denied. After several extensions were granted to both parties, the 28 U.S.C. § 2255 motion was finally fully briefed on May 13, 2008.

<u>Analysis</u>

To justify the grant of relief under 28 U.S.C. § 2255, a prisoner must establish an error of constitutional magnitude, a sentence outside the statutory limits, or an error of fact or law "so fundamental as to render the entire proceeding invalid." *Short v. U.S.*, 471 F.3d 686, 691 (6th Cir. 2006)(quoting *Mallett v. U.S.*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A petitioner who alleges a constitutional error must show that the error had a "substantial and injurious effect or influence" on the proceeding. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)(quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946)). If the error alleged is not a constitutional one, the petitioner must establish a "fundamental defect" which resulted in a "complete miscarriage of justice" or "an error so egregious that it amounts to a violation of due process." *Hill v. U.S.*, 368 U.S. 424, 428 (1962).

Defendant Sullivan has requested an evidentiary hearing in this matter. Such a hearing is required "unless the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. U.S.*, 178 F.3d 778, 782 (6th Cir. 1999). Put another way, no hearing is required when

6

the allegations are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* While Defendant Sullivan has impugned the integrity of the Assistant United States Attorney and has detailed page after page of what he claims are factual inaccuracies, misstatements, and outright lies, none of these alleged discrepancies justify the holding of an evidentiary hearing. For the most part, what Defendant Sullivan wants is for some court to substitute its judgment for the judgment of the jury that found him guilty. As that is not the function of the court, or the purpose of a § 2255 motion, the alleged factual "disputes" deserve, and will receive, no further mention.[12] After careful review of the existing record and files, it is apparent that not one of the four grounds alleged in support of the motion requires an evidentiary hearing.

In his petition and amended petition, Defendant Sullivan asserts that his trial and appellate counsel were both ineffective, in numerous ways, that he should be resentenced under the advisory federal sentencing guidelines, and that the United States withheld impeachment material. As Defendant Sullivan properly points out, pleadings of a *pro se* plaintiff are held "to less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). In light of the procedural posture of the case, the Court need not, however, as urged by Defendant Sullivan's citation to *Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983)(case involved

---

[12]For example, Defendant Sullivan accuses the AUSA of lying when summarizing the testimony of one eyewitness who told investigators that he saw a turquoise Chevrolet Camaro Z-28. Defendant Sullivan attempts to create a factual dispute by averring that his Camaro is "true blue" and "not a Z-28." Doc. 265, pp. 3-4. Similarly, in response to a statement in the United States' reply to his petition that a fingerprint left at one robbery scene matched his, Sullivan avers that the fingerprint was a "plant" because he had never been inside that bank. *Id.* at 4. Most of the claimed factual disputes are similar in nature to these two. Others fall into the "inherently incredible" category, such as the claim that certain trial testimony "is not in the transcript." *Id.* at 7. Still others, like his claim that "the record is not clear" as to which photo array was shown to a particular witness, *id.* at 8, are disproved by the record, which contains that witness's signature on one photo array introduced at trial, *see* Gov. Exh. 2.

a Rule 12(b)(6) motion to dismiss a prisoner's complaint), accept the factual allegations in his

pleadings as true or construe allegations in his favor.

1.      Ineffective Assistance of Trial Counsel

The established standard for evaluating effective assistance of counsel, *Strickland v.

Washington*, 466 U.S. 668, 687-88 (1984), requires a defendant to establish not only that counsel's

performance was deficient when measured by an "objective standard of reasonableness," but also

that the deficiency resulted in prejudice to the defendant.  Counsel's performance is not viewed with

the benefit of hindsight, but in light of his or her perspective at the time of the challenged action.

*Id.* at 689.  A reviewing court is to give a "heavy measure of deference to counsel's judgment," *id.*

at 691, and because the standard is conjunctive, if the court can more easily dispose of the claim on

the second ground – "lack of sufficient prejudice" – it may do so.  *Id.* at 697.  To show prejudice,

a petitioner must show a reasonable probability that the result of the proceeding would have been

different, had counsel not erred.  *Id.* at 694.

Four separate instances of ineffectiveness are asserted: counsel failed to investigate and

compel discovery, to call alibi witnesses, to object to the result of the report and recommendation

about the suppression motion, and to call a fingerprint expert.  In light of the facts of record and the

"heavy measure of deference" given trial counsel's strategic decisions, *id.* at 691, these alleged

deficiencies do not justify the requested remedy.

Counsel properly requested, and received, all the usual discovery.  Even if, as Defendant

Sullivan now claims, additional material was available to the United States[13], counsel had no way

_____

[13]Defendant Sullivan's amended petition claims, without support, that "over 50" reports
were withheld; he accuses the United States of witness tampering, "illegal unethical behavior,"
attempting to "perpetrate fraud upon the Court by witholding [sic] exulpatory [sic] evidence,"

8

of knowing at that time about the existence of that hypothetical additional material.[14]  As to the investigation, trial counsel's affidavit details the steps taken and the measures considered during trial preparation.[15]  *See* Doc. 259, attachment pp. 1-3.  Other than to fault counsel for failing to somehow compel additional evidence from the United States, Defendant Sullivan does not state what defense counsel should have investigated but did not.  Counsel's performance is not to be viewed with the benefit of hindsight, *Strickland*, 466 U.S. at 689, and a review of the entire record reveals that counsel requested discovery, investigated, prepared, and questioned witnesses based upon materials provided by the United States.  Defendant Sullivan has not pointed out a deprivation of effective counsel that meets the first-prong of the *Strickland* standard.

The matter of the alleged alibi witnesses is resolved even more readily.  According to the affidavit of trial counsel, Defendant Sullivan provided an incorrect spelling and a disconnected telephone number in connection with two witnesses who purportedly provided him with an alibi for

---

and presenting a "trumped up one sided exaggerated distortion of the facts."  Doc. 247, pp. 13-14.

[14]For example, Defendant Sullivan spends several pages of his memorandum in support of the amended petition on the fact that one eyewitness, Deborah Kenton, who worked at a bank robbed twice by the same individual, did not mention that the robber had facial hair.  The allegedly "missing evidence" would show, he claims, that he had a full beard and a thick mustache.  This discrepancy should have "exonerated" him, in his mind.  Doc. 247, pp. 12-13.  Kenton's trial testimony, however, was that in the first robbery, the robber entered the bank wearing a ski mask that allowed her to see the bridge of his nose, his mouth, and his eyes.  Doc. 196, p. 262.  The second time, the robber entered the bank without a mask, so she saw the side of his face.  *Id.* at 266.  He put a "hankie" around his face, but it fell, allowing her to see the left side of his face.  *Id.* at 266-67.  Kenton's lack of mention of facial hair would not have made the jury doubt her testimony, as it is simply not as crucial as Defendant Sullivan believes; the witness also admitted on cross that she failed to note the color of the ballcap the robber wore.  *Id.* at 276. In his reply memorandum, Defendant Sullivan actually accused Ms. Kenton of committing "perjury on the stand."  Doc. 265, p. 26.  He does not explain.

[15]Although Defendant Sullivan alleges that trial counsel failed to request prior written statements of eyewitnesses, in fact, defense counsel did question Ms. Kenton on the basis of her written description from the second robbery.  *Id.* at 273-78.

one robbery.  *See* Doc. 259, attachment p. 2.   Defendant Sullivan concedes that he misspelled the last name.  Doc. 265, p. 32.  In light of the number of robberies with which Defendant Sullivan was charged, counsel's attempts to locate the alleged alibi witnesses cannot be said, even with the benefit of hindsight, to constitute deficient performance.  Even if they did, however, Defendant Sullivan cannot show prejudice, as these two witnesses have since provided affidavits to the United States in which they fail to provide Defendant Sullivan an alibi for even that one robbery.  Doc. 205.

Counsel's failure to object to the report and recommendation regarding his motion to suppress eyewitness testimony constituted a waiver of Defendant Sullivan's right to appeal the admission of the eyewitness identification testimony.  *See* 431 F.3d at 984.  Once again, as he did at the suppression hearing, Defendant Sullivan claims that his is the only photograph in the three photo line–up exhibits with "obviously blue eyes."  *See* Doc. 247, p. 19.  Looking again at Exhibits 1, 2, and 4, the undersigned will reiterate that eye color is difficult to ascertain with any certainty.  As the Sixth Circuit pointed out, the admission of identification testimony violates due process only when the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Id.* (quoting *U.S. v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004)(quoting *Simmons v. U.S.*, 390 U.S. 377, 384 (1968))).  Under the Sixth Circuit's test for validity of a pretrial identification, the defendant bears the burden of first showing that the identification procedures were "unduly suggestive."  *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994).  After the suppression hearing, the undersigned recommended that the district court judge hold that Defendant Sullivan failed to meet that burden.  *See* Doc. 51, p. 17.  That, indeed, was the result, Doc. 57, and the Sixth Circuit reviewed the decision to determine whether the lower courts committed an error "so egregious that failure to permit appellate review would work a

10

miscarriage of justice." *Sullivan*, 431 F.3d at 984 (quoting *U.S. v. Real Property Located at 1184 Drycreek Road, Granville, Ohio 43023*, 174 F.3d 720, 725-26 (6th Cir. 1999)). According to the Sixth Circuit, "no egregious error" occurred to warrant appellate review. *Id.* at 985.

Defendant Sullivan does not point out any legal basis upon which his trial counsel should have objected to the report and recommendation except that suppression would have been an advantage to his case. In light of the testimony and exhibits produced and the very high standard for showing an impermissibly suggestive identification process, trial counsel had no viable grounds on which to object to the report and recommendation. A new basis is now offered in the § 2255 motion – that the undersigned wrote an "unethical [and] illegal" report and recommendation, as the Magistrate Judge's Act does not permit a federal magistrate to "intervene in a felony matter without the written consent of" the defendant or his counsel, which was lacking. Doc. 247, p. 21. Defendant Sullivan apparently read only 28 U.S.C. § 636(b)(1)(A) because § 636(b)(1)(B) clearly allows the district court to designate a magistrate to hear the motions mentioned in (b)(1)(A); the magistrate then submits proposed findings of fact and recommends legal conclusions, which is precisely what happened in this matter. Trial counsel's performance cannot be found deficient as a result of failing to file objections that had no merit.

The final alleged deficiency on the part of trial counsel is the failure to call a fingerprint expert at trial. According to trial counsel's affidavit, he did hire and consult with such an expert, who analyzed the fingerprint evidence in this case but learned no "information or evidence that would . . . assist counsel in presenting a defense for Gregory Sullivan." Doc. 259, Attachment p. 3, ¶¶ 14-16. The decision not to call the expert is trial strategy, which a reviewing court is required to afford great deference, according to the Supreme Court in *Strickland*. 466 U.S. at 691. The

failure to call an expert whose testimony is not going to benefit the client cannot be said to be deficient performance.

In his reply memorandum, Defendant Sullivan adds another instance of alleged deficient performance: failing to object to Defendant Sullivan's prison garb at the evidentiary hearing on the motion to suppress the eyewitness identifications. The purpose of that hearing was to determine whether either the creation or use of the photographic arrays was impermissibly suggestive. Every eyewitness who testified at that hearing had already identified Defendant Sullivan from a photographic array. Not one eyewitness was asked to identify him in the courtroom that day. *See* Doc. 96.

The Supreme Court of the United States has indeed stated that a defendant cannot be compelled to appear before a jury in prison garb. *Estelle v. Williams*, 425 U.S. 501, 512 (1976)(holding that failure to object to the garb negated the "compulsion" aspect needed to establish the violation of a constitutional right). Interpreting *Estelle*, the Sixth Circuit has held that "the mere fact that a defendant appears in prison attire during his trial does not necessarily mean that his right to a fair trial has been compromised." *U.S. v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004). The Supreme Court has even noted, albeit in dictum, that it could, under the right circumstances, be "constitutionally permissible" to bind and gag an unruly and disruptive defendant during his trial. *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970); *see also Ruimveld v. Birkett*, 404 F.3d 1006, 1013, 1018 (6th Cir. 2005)(holding that "it cannot be said the Supreme Court has held squarely that shackling [in view of the jury] is a practice so prejudicial as to preclude all harmless error review," but concluding that the error was not harmless in this case). The common theme from these precedents is that, even when the criminal defendant appears before a jury in prison garb, or

12

shackled, or bound and gagged, his constitutional rights have not necessarily been violated.  In Defendant Sullivan's case, he did not appear in prison garb before his jury, but at a pretrial hearing before fifteen eyewitnesses who had already identified him from a photographic array.  Defendant Sullivan cites no precedent for his claimed right to appear in street clothes at the pretrial hearing, and an extensive search through federal databases has revealed no authority to support this claimed right.  Even if counsel's failure to object to Defendant Sullivan's attire was deficient performance, no prejudice resulted in any case.  Regardless of what he was wearing, Defendant Sullivan was the only person other than counsel sitting at the defense table.  Even if his attire had not identified him as the defendant in the action, his location in the courtroom would have.  Finally, the aspect of compulsion is completely missing in this case; nowhere in his pleadings does Defendant Sullivan state that he asked to appear in something other than prison garb.

Because the right to appear in something other than prison garb at a pretrial proceeding is not an established constitutional right, counsel's failure to object to Defendant Sullivan's garb cannot be considered deficient performance.  *See, e.g., U.S. v. Taylor*, 132 F.3d 34, at *2 (6th Cir. 1997)(table)(where the defendant's claim about what trial counsel should have argued was without merit, the defendant was not prejudiced by any deficient performance); *Nunley v. U.S.*, 72 F.3d 130, at *2 (6th Cir. 1995)(table)(where the "underlying issue is without merit, counsel's failure to raise it was, obviously, not deficient").

In sum, trial counsel zealously and competently represented Defendant Sullivan through the pretrial, trial, and post-trial stages of his criminal prosecution.  The record reveals that trial counsel was prepared and informed throughout the proceedings.  The alleged deficiencies raised in Defendant Sullivan's numerous pleadings do not amount to deficient performance; indeed, upon

13

careful review of the records and files on behalf of this *pro se* individual, the undersigned could find

no instance of deficient performance.  Therefore, the court should hold that the requested 28 U.S.C.

§ 2255 motion not be granted on grounds of ineffective assistance of trial counsel.

2.      Ineffective Assistance of Appellate Counsel

Similarly four separate instances of ineffectiveness are asserted about appellate counsel:

counsel failed to consult, to raise relevant factual claims, and to investigate, and counsel filed the

§ 2255 motion prematurely.  Again, the *Strickland* standard applies and requires Defendant Sullivan

to establish not only that appellate counsel's performance was deficient when measured by an

"objective standard of reasonableness," but also that the deficiency resulted in prejudice.  The

review is undertaken without the benefit of hindsight and with a "heavy measure of deference."  466

U.S. at 689, 691.  Appellate counsel who files a merits brief "need not (and should not) raise every

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of

success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  The presumption of effective

assistance of counsel will be overcome "only when ignored issues are clearly stronger than those

presented."  *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  In a review of the

effectiveness of appellate counsel, the prejudice prong of the *Strickland* test requires the defendant

to show, to a "reasonable probability," that but for counsel's deficient performance, "he would have

prevailed on his appeal."  *Id.* at 285.

Defendant Sullivan's claims that appellate counsel failed to consult, to raise relevant factual

claims, or to investigate are refuted by the record.  As Defendant Sullivan admits in his final

pleading, appellate counsel filed six motions on his behalf even before his sentencing.  Appellate

counsel located the purported alibi witnesses, despite the misspelled last name and disconnected

14

telephone number Defendant Sullivan produced, and worked diligently to get the testimony of those witnesses before the trial court prior to sentencing, in an attempt to win a new trial.  Appellate counsel also met with Defendant Sullivan's daughter, Amanda.[16]  Defendant Sullivan also admits that he and appellate counsel discussed issues for appeal.  Doc. 247, p. 24.  Defendant Sullivan characterizes the filing of the appellate brief as "surreptitious" simply because he did not see or consent to it.  He cites no authority for his proposition that he had a constitutional right to see or consent to an appellate brief filed on his behalf.  While the Supreme Court recognizes the right of the accused to make "certain fundamental decisions" regarding his own case, including the decision to take an appeal, the Court has held that he has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Nowhere in his petition, amended petition, or traverse, does Defendant Sullivan describe the issues that he believes should have been, but were not, raised on appeal.  In light of the admitted facts described above and in Defendant Sullivan's pleadings in greater detail, Defendant Sullivan has failed to make any showing that omitted issues were stronger than included ones, or that the result of his appeal could have been changed by the inclusion of any additional legal issue.  *See Smith*, 528 U.S. at 288, 285.  These three asserted claims of ineffectiveness of counsel, therefore, provide no support for the grant of the § 2255 motion.

Judging from the amount of briefing on the final allegation of ineffectiveness, Defendant Sullivan's chief criticism of appellate counsel was the premature filing of a § 2255 motion and the inclusion of the ineffectiveness of counsel issue in the appellate brief.  *See* Doc. 265, pp. 36-39; Doc.

---

[16]All of these facts are taken from Defendant Sullivan's final pleading.  Doc. 265, pp. 36-37.

247, pp. 23-24; and, Doc. 239, p. 6.  Defendant Sullivan admits that he suffered no prejudice from the premature filing of the § 2255 motion.  Doc. 265, p. 36.  And, as the United States points out, the Sixth Circuit simply declined to address the ineffectiveness of counsel on direct appeal, so Defendant Sullivan suffered no prejudice from the inclusion of that issue by appellate counsel.  As *Strickland* permits a court to look first at the prejudice prong, this act by appellate counsel did not prejudice Defendant Sullivan and provides no basis for the grant of the § 2255 motion.

Appellate counsel zealously represented Defendant Sullivan from the post-trial period through the direct appeal.  Defendant Sullivan has failed to show any act or omission that could be characterized as deficient performance.  Therefore, the § 2255 motion should not be granted on the basis that appellate counsel was ineffective.

3.     Impact of Advisory Sentencing Guidelines

Because his case was on direct appeal when *U.S. v. Booker*, 543 U.S. 220 (2005) was decided, Defendant Sullivan claims that he is entitled to resentencing under the now-advisory sentencing guidelines. Sixth Circuit precedent clearly holds that an appellate court will presume error when a district court sentenced a defendant under the mistaken belief that the guidelines were mandatory.  *U.S. v. Martin*, 438 F.3d 621, 629 (6th Cir. 2006).  However, the government can overcome that presumption with "clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence" under advisory guidelines.  *U.S. v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005).

At Defendant Sullivan's sentencing, the district court judge explained the sentence as follows: "I chose the top of the guideline range because there were certain bank robberies that were

not taken into account . . . that is in calculating his criminal history."[17]  Doc. 207, p. 24.  While the undersigned can recommend a finding that this statement constitutes the necessary "clear and specific evidence" and that the district court judge would have imposed the same sentence post-*Booker*, that particular finding is within the province of the district court judge who both sentenced Defendant Sullivan and will rule on this report and recommendation.   Or, the district court can exercise the discretion to re-sentence Defendant Sullivan and to specifically consider the factors of 18 U.S.C. § 3553(a), an exercise not necessary at the time of his original sentencing in 2003.

4.      Cumulative Effects of Counsels' Errors[18]

        In his amended petition, Defendant Sullivan alleges that the cumulative effect of the numerous "errors, oversights and general incompetence" of his trial and appellate counsel require that he be granted a new trial.  For this proposition, Defendant Sullivan cites *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000)(petitioner who could not show two trial errors could not prevail on a cumulative effect claim): "Trial errors which in isolation are harmless might, when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law."  In the Sixth Circuit, the cumulative error claim has been used successfully when the resulting trial setting is "fundamentally unfair."  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)(cumulative effect of admitting marginally relevant and irrelevant evidence designed to arouse prejudice against defendant

---

[17]This explanation pertained to the sentence for Counts 1, 3, 4, and 6-14; the sentences on Counts 2 and 5 were based on statutory minimums.

[18]In his original petition, Ground Four was that the government had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  This claim was fully addressed by the Sixth Circuit on direct appeal, 431 F.3d at 985-86, and issues decided on direct appeal may not, except under narrow circumstances not present here, be relitigated in a § 2255 proceeding.  *See DuPont v. U.S.*, 751 F.2d 1506, 1507 (6th Cir. 1985).

denied him fundamental fairness). More recently, the Sixth Circuit has qualified that "the accumulation of non-errors cannot collectively amount to a violation of due process." *Campbell v. U.S.*, 364 F.3d 727, 736 (6th Cir. 2004)(numerous claims of ineffective assistance of counsel, all of which were found not to warrant relief, could not be aggregated to amount to a violation of due process)(quoting *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995)); *see also U.S. v. Conteh*, 234 Fed. Appx. 374, 389 (6th Cir. 2007).

As discussed above, neither trial nor appellate counsel rendered ineffective assistance of counsel. Defendant Sullivan, having shown no errors, cannot prevail on a cumulative error claim. *See Campbell*, 364 F.3d at 736. Defendant Sullivan's fourth and final claimed basis for the relief sought under § 2255 is, similarly, without merit.

<u>Conclusion</u>

As each of Defendant Sullivan's four grounds asserted in support of the requested relief under § 2255 should be found to be without merit, IT IS RECOMMENDED THAT:

1)      To the extent the motion requests that Defendant Sullivan's conviction be vacated and set aside, the motion (Doc. 247) should be DENIED; and

2)      To the extent the motion requests that Defendant Sullivan be resentenced, the motion should be DENIED.

Particularized objections to this Report and Recommendation must be filed within ten days of the date of service or further appeal is waived. *U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v.*

18

*Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).   Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.   *Howard*, 932 F.2d at 509.   A party may respond to another party's objections within ten days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

Dated the 25th day of July, 2008.

Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge