UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 02-45-DLB-1
CIVIL ACTION NO. 16-168-DLB

UNITED STATES OF AMERICA                                                            PLAINTIFF

v.               **ORDER ADOPTING REPORT AND RECOMMENDATION**

GREGORY SULLIVAN                                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Proceeding *pro se*, Defendant Gregory Sullivan filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on September 16, 2016. (Doc. # 356). This is Sullivan's third such Motion to Vacate in the course of his protracted post-conviction proceedings. (Doc. # 423 at 1); *see also* (Docs. # 213 and 239). Sullivan was convicted in 2003 of robbing multiple financial institutions in Kentucky. He pursued a direct appeal and two Motions to Vacate[1] following his conviction. (Doc. # 423 at 2, 4). All were unsuccessful but "a limited 2015 resentencing after the habeas appeal . . . revived the nearly dead case." *Id.* at 2. Following resentencing Sullivan did not directly appeal the new Judgment. *Id.* at 5. Rather, he filed the instant Motion to Vacate. *Id.* Pursuant to the Court's local practice, the Motion was referred to a magistrate judge for

---

[1] The first Motion to Vacate was filed while Sullivan's direct appeal was pending and, thus, was denied as premature. (Doc. # 423 at 4). The second was denied by the district court; Sullivan appealed the denial to the Sixth Circuit. *Id.* at 4-5. The Circuit affirmed the denial but remanded the case for resentencing. *Id.* at 5.

1

preparation of a Report and Recommendation (R&R).  Accordingly, this matter is presently before the Court on the R&R of Magistrate Judge Robert E. Wier,[2] wherein Judge Wier recommended that the Court deny Sullivan's Motion to Vacate.  *Id.* at 72.  Judge Wier also generously ordered that Sullivan could file up to forty pages of objections to the R&R.  *Id.*

After two extensions of time to file his objections, *see* (Docs. # 425 and 427), Sullivan filed a Motion for Leave to File Excess Pages (Doc. # 429), and attached his proposed Objections, totaling seventy-four pages in length.  (Doc. # 429-1).  The United States filed a Response in opposition to the Motion for Leave, citing Sullivan's pattern of ignoring the Court's Orders to comply with the Local Rules' page limits.  (Doc. # 430) (citing Docs. # 373, 375, 379, 391, 417, and 419).  Sullivan filed a Reply in support of his Motion for Leave, pointing out that the length of his proposed Objections is reasonable because the R&R totals seventy-three pages.  (Doc. # 431).  Out of an abundance of caution, the Court will consider the entirety of Sullivan's proposed Objections, despite his failure to comply with Judge Wier's Order.  (Doc. # 423) (ordering that Sullivan's objections must be limited to forty total pages).  Accordingly, the R&R is now ripe for the Court's review.[3]

---

[2] Judge Wier received his judicial commission as a district judge of the Eastern District of Kentucky on June 12, 2018, terminating his service as a magistrate judge.

[3] In the interest of judicial efficiency, the Court herein incorporates Judge Wier's thorough summary of the complex factual and procedural background of this case.  (Doc. # 423 at 2-8).

## II. ANALYSIS

### A. Standard of Review

Requiring "the filing of objections is supported by sound considerations of judicial economy. The filing of objections to a magistrate's report enables the district judge to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Objections to an R&R must be "specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "The filing of vague, general, objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'" *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)). Also, "[w]here an objection is simply a repetition of what the Magistrate Judge has already considered, it fails 'to put the Court on notice of any potential errors in the Magistrate's R&R'" and is improper. *United States v. Bowers*, No. 0:06-cv-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017) (quoting *United States v. Shephard*, No. 5:09-cr-81-DLB, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016)). Finally, when objections are so unclear that "even the most perspicacious judge [would have] to guess at its meaning . . . the district court judge should not be forced to waste time interpreting such requests." *Howard v. Sec. of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Properly-objected-to portions of the R&R will be reviewed by the Court *de novo*. Fed. R. Crim. P. 59(b)(3). However, "to the extent the Court can identify specific objections, the Court 'is not required to articulate all of the reasons it rejects a party's objections.'" *Hnatiuk v. Rapelje*, No. 06-13880, 2010 WL 2720881, at *1 (E.D. Mich. July 8, 2010) (quoting *Thomas v. Halter,* 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001)); *see also Tuggle v. Seabold*, 806 F.2d 85, 92 (6th Cir. 1986).

**B. Defendant failed to raise any specific, discernable objections to the R&R.**

Like his initial Motion to Vacate, Defendant's seventy-four pages of proposed Objections are repetitive, offer limited legal discussion, and "make[] precious few cites to the specific evidence he intends the Court to review." (Doc. # 423 at 9, 16 n.13). In some cases, Sullivan goes pages without specifically objecting to anything in the R&R; rather he makes a general objection and then launches into a rambling, unfounded, and uncited recitation of the facts allegedly supporting his theory that he was framed for these crimes. (Doc. # 429-1 at 60-68) (making conclusory objections at the beginning of a section and then vaguely alluding to alleged problems with Judge Wier's R&R). Many of his objections are vague, general, and conclusory. Others, even construed loosely, are incomprehensible. While the Court is required to construe *pro se* filings leniently, *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985), "Sullivan [still] is the movant and has the burden of justifying relief." (Doc. # 423 at 9). Judge Wier aptly noted that Sullivan's "procedural lapses not only make the plowing difficult, they also undercut the validity and proper presentation of the theories for relief." *Id.* The Court has done its best to carefully review Sullivan's specific objections, but his rambling paragraphs that jump from topic to topic, *see, e.g.*, (Doc. # 429-1 at 22-23, 50), make this task extremely difficult.

4

Unfortunately for Sullivan, "[c]laim volume does not correlate to claim merit." (Doc. # 423 at 7).

### 1. Many of defendant's objections are improperly repetitive.

Throughout Sullivan's seventy-four pages, he asserts and reasserts arguments that have already been made to the Court, which is procedurally improper. *Bowers*, 2017 WL 6606860, at *1. For example, when "objecting" to Judge Wier's conclusion that some of Sullivan's *Brady* claims were procedurally defaulted, Sullivan repeats—almost verbatim—swaths of his Reply brief in his proposed Objections. *Compare* (Doc. # 420 at 2), *with* (Doc. # 429-1 at 8). He again repeats the same information and arguments in objecting to Judge Wier's analysis surrounding the bait bills. *Compare* (Doc # 420 at 10-11), *with* (Doc. # 429-1 at 12-13). In fact, nearly all of Sullivan's Reply brief is repeated in his objections;[4] in some cases arguments are repeated word-for-word and in other cases Sullivan uses his objections to further explain arguments from his Reply. Similarly, Sullivan's proposed Objections echo the arguments first made in his Motion to Vacate. *Compare, e.g.,* (Doc. # 407 at 12), *with* (Doc. # 429-1 at 57-58). As a result, the vast majority of Sullivan's objections are merely repetitive of arguments previously made before the Court. He appears to use his objections as a vehicle to get a second bite at

---

[4] *Compare* (Doc. # 420 at 4-5), *with* (Doc. # 429-1 at 14-15, 25-26) (appearing to make similar arguments regarding Officer Puthoff's testimony and Agent Warner's presence at the Heritage Bank crime scene); *compare* (Doc. # 420 at 5), *with* (Doc. # 429-1 at 29) (appearing to make similar arguments regarding a signature on the line-up); *compare* (Doc. # 420 at 6), *with* (Doc. # 429-1 at 57-58) (appearing to make similar arguments regarding his attorney's alleged relationship with Agent Warner); *compare* (Doc. # 420 at 6-8), *with* (Doc. # 429-1 at 26-29, 53) (appearing to make similar arguments regarding the obtaining of the baseball hat evidence); *compare* (Doc. # 420 at 12-13), *with* (Doc. # 429-1 at 17-19) (appearing to make similar arguments regarding the string of robberies); *compare* (Doc. # 420 at 14), *with* (Doc. # 429-1 at 40-43) (appearing to make similar arguments regarding the hat, shoe, and shirt evidence); *compare* (Doc. # 420 at 14-15), *with* (Doc. # 429-1 at 72) (appearing to make similar arguments regarding whether the bank was federally insured); *compare* (Doc. # 420 at 16-17), *with* (Doc. # 429-1 at 67-68) (appearing to make similar arguments regarding alleged ineffective assistance of counsel); *compare* (Doc. # 420 at 17), *with* (Doc. # 429-1 at 70-72) (appearing to make similar arguments regarding jailhouse informants).

the apple and put the same arguments before this Court in hopes that it might come to a different conclusion than Judge Wier. Such an attempt frustrates the purpose of the R&R process; thus, these objections must be **overruled**.[5]

### 2. Defendant's objections to page limitation lacks merit.

Additionally, Sullivan objects time and again—including in these proposed Objections—to the Court limiting the length of his Motion to Vacate.[6] *See, e.g.*, (Doc. # 429-1 at 1-2, 10, 45). Sullivan, however, continually fails to cite any precedent showing that the Court erred in limiting Defendant's Motion to Vacate to the page limit allowed by the Local Rules. LR 7.1(d). As much as Sullivan may want the law to allow him to submit a six-hundred-and-three-page filing including a memorandum and exhibits in support of his Motion to Vacate, (Doc. # 369), the local rules simply do not allow him to do so. Nor has Sullivan made any showing that his three-hundred-and-forty-four-page memorandum would add substance to his argument in any *meaningful* way. All people with matters

---

[5] Some of Sullivan's objections and ramblings seem to even suggest an attempt to relitigate parts of his Motion to Suppress out-of-court witness identifications resulting from photo arrays the Defendant claims were unduly suggestive. *Compare* (Doc. # 51 at 16-19) (Judge Wehrman's Motion to Suppress R&R which was adopted by Doc. # 57), *with, e.g.*, (429-1 at 33-38) (Sullivan's objections appearing to deal with the same issue). The Motion to Suppress, (Doc. # 17), was filed nearly 17 years ago; it was denied by the district judge following the recommendation of a magistrate judge. (Doc. # 267 at 10-11) (summarizing the past litigation of this issue in Judge Wehrman's R&R for Sullivan's first Motion to Vacate). Defendant failed to object to the Motion to Suppress R&R thus waiving appellate review; the Sixth Circuit did, however, find that "the lower courts committed no egregious error" in denying the Motion to Suppress. *United States v. Sullivan* (*Sullivan I*), 431 F.3d 976, 985 (6th Cir. 2005). Sullivan brought the issue up again as part of an ineffective-assistance-of-counsel claim in his first Motion to Vacate, (Doc. # 247 at 19-21). He again failed to object to the first Motion to Vacate R&R and therefore waived appellate review; the Circuit did affirm the denial of the Motion to Vacate. *Sullivan v. United States* (*Sullivan II*), 587 F. App'x 935, 948-49 (6th Cir. 2014) (affirming most of the denial of the Motion to Vacate but remanding for resentencing). He appears to be raising the same issues again in this Motion to Vacate. The Court will not *again* revisit and rehash the issue of identification as it has now been dealt with by multiple judges at multiple levels of the federal court system; doing so would frustrate judicial efficiency. As the Sixth Circuit has stated, at some point, this litigation must come to an end. *Sullivan II*, 587 F. App'x at 936.

[6] Similarly, he also continues to obstinately object to the Court denying him the ability to expand the record without citing precedent to support his position, *see, e.g.*, (Docs. # 429-1 at 2-4, 10, 17, 39, 44), and despite the Court continually denying his request. *See, e.g.*, (Docs. # 401, 404, 408 and 414).

before the Court—including Sullivan—must present their arguments in a clear and concise manner. Allowing Sullivan an exception to this rule would frustrate the interests of judicial efficiency and would squander limited judicial resources. Once again, this objection will be **overruled**.

> **3. Defendant's objections on the ground that he disagrees with the R&R are improper.**

Also, many of Sullivan's objections indicate mere disagreement with Judge Wier's analysis or conclusions. Such objections are also procedurally improper. *Vanover*, 2017 WL 1356328, at *1. For example, Judge Wier found that the prosecutors failed to turn over two pieces of evidence—the Bait Bill evidence log and the Boone County Sheriff's Office report—that may have been favorable to Sullivan, but ultimately found that the non-disclosure was not prejudicial to him. (Doc. # 423 at 29-33). Sullivan objects to Judge Wier's conclusion that the non-disclosure of the Bait Bill evidence log was not prejudicial by, among other things, alleging that the bank teller lied on the stand about the bait bills, unconvincingly alluding that the log would have discredited the testimony, and speculating that the jury believed the teller's testimony. (Doc. # 492-1 at 11-13). The Court finds such an objection to be a mere disagreement with Judge Wier's conclusion that the log would not have impeached the teller's testimony. (Doc. # 423 at 20-21).

Sullivan similarly disagrees with how Judge Wier interprets the evidence before him. *See, e.g.*, (Doc. # 429-1 at 51) (explaining that the "magistrate do[es] not realize how suspect this alleged fingerprint is" thus suggesting that Sullivan disagrees with how Judge Wier viewed the evidence); *see also* (Doc. # 429-1 at 24) (explaining that the magistrate judge "fails to realize [statements of witnesses] were not true"). Many of these disagreement objections are also repetitive, and thus have already been **overruled** by

7

this Court. To the extent that any "disagreement" objections have not yet been overruled, the Court hereby **overrules** them.

### 4. Defendant's request that the Court "review" documents is improper.

Sullivan also continually directs this Court to "please review" entire documents or parts of filings in relation to the R&R. *See, e.g.*, (Doc. # 429-1 at 5, 10, 12, 23, 30, 50). Beyond not being a proper objection, Sullivan's frequent request is inappropriate. Sullivan—*not the Court*—has the burden of justifying his claim for relief. (Doc. # 423 at 9). It is not the job of the Court to hunt for the evidence which may or may not support a petitioner's motion. *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Rather, it is the job of the Defendant to clearly and concisely identify specific factual and legal problems with a magistrate judge's R&R. Fed. R. Crim. P. 59(b)(2). Sullivan has failed to do that. Rather, Sullivan uses "objections" to launch into long, rambling, and frequently un-cited factual allegations, which are not supported by the record and which do not specifically respond to Judge Wier's R&R. Sullivan appears to attempt, as Judge Wier recognized, to relitigate the entire case and "bludgeon his way to relief with a host of attacks on trifles in the case periphery." (Doc. # 423 at 7). Because Sullivan fails to identify actual legal or factual problems with Judge Wier's sound and thorough analysis, many of his objections must be **overruled** as being procedurally improper.

### 5. Defendant's factual objections are meritless.

From a substantive perspective, those objections which have not previously been overruled are similarly meritless. Again, Sullivan fails to specifically dispute Judge Wier's

legal analysis. In fact, Sullivan spends the majority of his Objections espousing different factual information than that found during trial and summarized by Judge Wier. Sullivan took a similar approach in his first Motion to Vacate; in Judge Wehrman's R&R for that Motion, he noted that "what Defendant Sullivan wants is for some court to substitute its judgment for the judgment of the jury that found him guilty." (Doc. # 267 at 7) (adopted in full by Doc. # 293). The same appears to be the case in this Motion to Vacate. The problem for Sullivan is "[t]hat [this] is not the function of the court, or the purpose of a § 2255 motion." *Id.*

"[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera v. Collins*, 506 US 390, 400 (1993). Alternatively, it is the job of the *jury* to determine whether witnesses are credible and come to a conclusion about whether someone is guilty. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005) (noting that the issue of witness credibility "is clearly the province of the jury") (citing *Herrera*, 506 US at 401-02). Accordingly, in a habeas proceeding, the decisions of a jury as to these factual issues are given deference.[7] *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985) (quoting *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) ("[T]he jury's resolution of questions of credibility and demeanor . . . is entitled to 'special deference.'"). The Court will defer to the jury's findings as there is no credible evidence that a factual error of constitutional magnitude occurred which would undermine the jury's verdict.

---

[7] *Herrera v. Collins* and *Brown v. Davis* are cases arising out of Motions to Vacate pursuant to 28 U.S.C. § 2254. *See* 506 US 390; 752 F.2d 1142. "[P]recedents under § 2255 and under § 2254 may generally be used interchangeably." *United States v. Asakevich*, 810 F.3d 418, 423 (6th Cir. 2016) (quoting 3 Charles Alan Wright et al., Federal Practice and Procedure § 623 (4th ed. 2015)).

As Judge Wier noted, Sullivan continues to claim that he was framed for the bank robberies. (Doc. # 423 at 1). Specifically, for example, Sullivan argues that multiple witnesses perjured themselves, *see, e.g.*, (Doc. # 429-1 at 14, 17, 19-20, 22), and he puts forth an alternative set of facts that apparently support his baseless theory. *See, e.g.*, (Doc. # 429-1 at 23-30). He also claims that evidence was fabricated by the United States. *See, e.g.*, (Doc. # 429-1 at 26, 27, 54-55). A jury, however, unanimously convicted Sullivan of ten counts of bank robbery, two counts of armed bank robbery, and two counts of use of a firearm during and in relation to a crime of violence. *Sullivan II*, 587 F. App'x at 936-37. The Court will not second guess the jury by re-determining witness credibility as Sullivan apparently wants this Court to do. *See* (Doc. # 429-1 at 54) (arguing that Defendant "would never find Officer Puthoff credible for anything"). Further, Sullivan fails to credibly connect the alternative facts he presents to potential constitutional violations.[8] Rather, he offers wild speculations, *see, e.g.*, (Doc. # 429-1 at 47-48) (offering mere speculation that the jury asked for a magnifying glass because they were "in fact 'troubled' by 'discrepancies' of the government's surveillance footage when looking at Defendant's 'shirts' and 'tennis shoes' . . . and trying to compare them with Warner's still shots"), and then, even reading the objections in the most lenient way

---

[8] For example, Sullivan appears to object to Judge Wier's factual summary of the case because, Sullivan alleges, Judge Wier "quoted untrue facts, miscontru[ed] facts, and [took] testimonies out of context." (Doc. # 429-1 at 4). More specifically, Sullivan argues that Sixth Circuit's factual summary of the case, which Judge Wier quoted, was "mostly not true." *Id.* While Sullivan makes conclusory statements that correct facts would have impeached witness testimony and that he was prejudiced by the use of "[t]hese deceiving and untrue facts," he does not appear to point to specific errors in Judge Wier's R&R that results from the alleged factual problems. *Id.* at 7. Objections which do not identify an error are meritless, and thus these objections to Judge Wier's factual summary are **overruled**. *Howard*, 932 F.2d at 509.

possible, barely alludes to his conclusion that his speculative facts indicate a constitutional violation.

Through his factual objections, which mostly take the form of an alleged alternative factual summary, Sullivan appears to be attempting to show the Court that he is actually innocent. To do this, however, Sullivan must demonstrate that "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotations omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). As the Sixth Circuit has previously indicated, however, and which remains true today, "there is no such showing here." *Sullivan II*, 587 F. App'x at 936.

> Confronted with a forest of evidence against him, Sullivan . . . [has] taken aim at a few stray branches, at which [he] hack[s] away virulently in an apparent hope that we might mistake these branches for the forest itself. But the forest of evidence is overwhelming—the prosecutor proved Sullivan was guilty, the jury rendered a unanimous guilty verdict, and the district court sentenced Sullivan less harshly than it could have. Sullivan . . . [has] his] own reasons for persisting in a never-ending litany of motions and amendments, but at some point that must come to an end."

*Id.*[9] Accordingly, Sullivan's factual objections—if considered objections at all—are **overruled**.

---

[9] The Court's conclusion that the Sixth Circuit's finding remains true, is supported by the fact that Sullivan draws wildly speculative conclusions about some of the evidence in an attempt to show his innocence, despite the fact that more logical, coherent, and believable inferences exist. For example, as Judge Wier noted, Sullivan argues that the suppression of unidentified fingerprints from the banks "would have materially aided his defense." (Doc. # 423 at 23). Judge Wier correctly indicated, however, that "[t]he number of non-exculpatory inferences available from non-matching print removal," like the inference that other people in a public bank may have also touched the door of the bank, "overwhelmingly outweighs the single Sullivan-favorable possibility" that he was not the robber despite overwhelming evidence offered against him. *Id.*

### 6. Defendants objections regarding procedural default are meritless.

The closest thing the Court finds to a substantive objection is Sullivan's argument that his claims are not procedurally defaulted, as Judge Wier found many of them to be. (Doc. # 429-1 at 8-9). While the objections appear to be substantive at first glance, some of his objections merely repeat the arguments about procedural default from Sullivan's Reply brief and thus put many of the same arguments that were before Judge Wier before this Court. *Compare* (Doc. # 420 at 1-3), *with* (Doc. # 429-1 at 8-9). Thus, these objections have already been overruled.

Sullivan also appears to present a new argument that he did not procedurally default his *Brady* claims by failing to raise them on appeal because the Sixth Circuit's remand, which ultimately allowed him to file this new Motion to Vacate, was limited to his *Booker* claim. Therefore, he claims he could only file a direct appeal from the new Judgment as to the *Booker* resentencing issue. (Doc. # 429-1 at 9). Sullivan is mistaken, however, in characterizing the Sixth Circuit's remand as limited.

In its remand language, the Sixth Circuit remanded "to the district court for resentencing consistent with this opinion." *Sullivan II*, 587 F. App'x at 948-49. "In the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999). "A limited remand must 'explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. . . . [t]he language used to limit the remand should be, in effect, unmistakable.'" *United States v. Obi*, 542 F.3d 148, 154 (6th Cir. 2008) (quoting *Campbell*, 168 F.3d at 265, 268). The Sixth Circuit has previously held that remand orders that send a case back to the district court for resentencing consistent

12

with the appellate opinion are general, rather than limited, remands. *See United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) (identifying a remand as general even though the Court "identified a discrete sentencing issue that required remand" because "our opinion did not articulate a framework for the proceedings on remand or otherwise limit the district court's inquiry to that issue in unmistakable terms"); *see also Obi*, 542 F.3d at 154.

Here, as the language from the Sixth Circuit "does not outline the procedure that the district court is to follow nor does it articulate the chain of events with particularity," the remand order from the Sixth Circuit is general rather than limited. Thus, Sullivan's argument that the remand order limited the scope of a potential direct appeal from the new Judgment is misguided. Accordingly, Judge Wier was correct in finding the *Brady* claims to be procedurally defaulted for failure to directly appeal them and Sullivan's objection must be **overruled**.[10]

### 7. Defendant's disagreement with the magistrate judge's legal analysis is meritless.

One could also interpret Sullivan's disagreements with Judge Wier's interpretation of relevant case law to be substantive objections. Generally, disagreements with a magistrate judge's conclusion are not procedurally-valid objections. *Vanover*, 2017 WL 1356328, at *1. One might, however, understand a disagreement with an interpretation of precedent to be a legal objection. For example, Sullivan appears to object to Judge Wier's interpretations of *D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008), and *United*

---

[10] Moreover, even if Sullivan's objection were correct, the Brady claims are substantively meritless as highlighted by Judge Wier. (Doc. # 423 at 14-33).

13

States v. Howard, 516 F. App'x 409 (6th Cir. 2013).[11]  (Doc. # 429-1 at 17-18).  Judge Wier cites these cases in support of his finding that the non-disclosure of early investigatory reports and non-matching fingerprints were not *Brady* violations.  (Doc. # 423 at 23, 27).  In both cases, Sullivan cherry-picks lines or facts in support of his arguments and fails to show how the non-disclosure of the at-issue evidence amounts to a *Brady* violation.

For example, Sullivan disagrees with Judge Wier's conclusion that early investigatory reports about the robbery were "neither impeaching or exculpatory."  (Doc. # 423 at 27).  While Sullivan was correct in indicating that the *D'Ambrosio* court found that in some cases police detective opinions might be so "concrete and well-known to other government agents working on a case that the prosecutor's failure to leave the opinion and disclose it" might be a *Brady* violation, Sullivan failed to take into account the beginning of the same paragraph which also indicates, however, that not every thought of a police officer rises to the level of something that must be disclosed.  *D'Ambrosio*, 527 F.3d at 499*.  D'Ambrosio* does not prescribe the exact bounds of which police investigative materials must be disclosed but appears to leave it to judges to make that determination.  *Id.*

Judge Wier, considering the evidence holistically and any potential prejudice the evidence may have caused, found that the failure to disclose early detective records in

---

[11]  In disputing Judge Wier's interpretation of *Howard*, Sullivan cites *Newsome v. McCabe* in support of his allegations.  (Doc. # 429-1 at 18).  The citation lists *Newsome* as a Sixth Circuit case, while it is, in reality, a Seventh Circuit case; thus, it is not binding on this Court.  *Newsome*, 256 F.3d 747 (7th Cir. 2001). The Court will not speculate as to whether this mistake was an intentional attempt to deceive the Court. Sullivan also appears to object to Judge Wier's interpretation of *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015).  *See* (Doc. # 429-1 at 8).  Sullivan's interpretation of *King* was included in his Reply brief, *see* (Doc. # 420 at 2); thus, it has already been overruled for being merely repetitive of that which was before the magistrate judge.  *See supra.*

this case was not a *Brady* violation. This Court, in reviewing the issue *de novo*, agrees with Judge Wier. Reports indicating that detectives did not immediately connect the robberies would not have suggested to the jury that Sullivan was innocent. Rather, such reports would merely indicate that "a particular author, on the reporting date, and without the correlative aid of an identified suspect, had not connected all twelve robberies." (Doc. # 423 at 27). No jury member would be surprised that it took years for police detectives to piece together this serial crime. Further, the lack of disclosure was not prejudicial to Sullivan because "[t]he jury knew authorities were unable to connect Sullivan to the various robberies during the mid-stream investigation. *Id.* at 28.

Similarly, in disputing *Howard*, Sullivan argues that the fingerprints in *Howard* were smudges, while, presumably, he thinks the unidentified fingerprints in this case were clearer. (Doc. # 421-1 at 18). He ignores, however, that the *Howard* court discusses why unidentifiable prints, presumably even if they were clear, are not critical evidence because they prove "only a neutral point—that someone, anyone" touched that at-issue item. *Howard*, 516 F. App'x at 411. Additionally, the fact that other, non-matching prints were found by the police was acknowledged by prosecution witnesses and highlighted by Sullivan's attorney during trial; thus, the lack of disclosure of the reports of unidentified prints, again, is not a *Brady* violation. (Doc. # 423 at 23-25). As a result, these pseudo-legal objections are misguided and must be **overruled**.

### 8. Defendant is not entitled to an evidentiary hearing.

Finally, Sullivan continues to argue that an evidentiary hearing is necessary to resolve his pending Motion to Vacate. However, no such hearing is necessary when "the petitioner's allegations 'cannot be accepted as true because they are contradicted by the

record, inherently incredible, or conclusions rather than statements of facts.'" *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). All of Sullivan's factual assertions are contradicted by the record before the Court; those which are not directly contrary to the extensive record are inherently incredible. Thus, no evidentiary hearing is necessary; Defendant has failed to demonstrate that an evidentiary hearing would produce anything more than his own continued assertion of unsupported facts and theories. Thus, Sullivan's continued objection to a denial of an evidentiary hearing is **overruled**.

### III. CONCLUSION

In sum, Sullivan fails to raise any specific, *discernable* legal objections to Judge Wier's conclusions. Perhaps somewhere in Sullivan's rambling seventy-four pages there is a proper objection—a hidden needle in the haystack. Despite thorough review, however, the Court has failed to find it. Having found no clear meritorious objections, having carefully reviewed Judge Wier's R&R, and agreeing with his analysis and conclusions,

**IT IS ORDERED** as follows:

(1) Defendant's Motion for Leave to File Excess Pages (Doc. # 429) is **GRANTED** and the attendant Proposed Objections (Doc. # 429-1) shall be **FILED OF RECORD**;

(2) The Report and Recommendation of the United States Magistrate Judge (Doc. # 423) is hereby **ADOPTED** as the findings of fact and conclusions of law of the Court;

(3) Defendant's Objections (Doc. # 429-1) are hereby **OVERRULED** as set forth herein;

(4) Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. # 356) is hereby **DENIED**;

(5) This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket;

(6) For the reasons set forth herein and in the Magistrate Judge's Report and Recommendation (Doc. # 423), the Court determines there would be no arguable merit for an appeal in this matter and, therefore, **NO CERTIFICATE OF APPEALABILITY SHALL ISSUE**; and

(7) A separate Judgment will be filed concurrently herewith.

This 26th day of March, 2019.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2002\02-45 Final Order Adopting 2255 R&R.docx