UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 02-45-DLB

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                      **MEMORANDUM ORDER**

GREGORY SULLIVAN                                             DEFENDANT

*** *** *** *** *** ***

**I.   INTRODUCTION**

This matter is before the Court on the United States' Motion for a Turn Over Order. (Doc. # 442). Defendant Gregory Sullivan, proceeding pro se, filed Objections in response. (Doc. # 444). Thus, the motion is ripe for the Court's consideration. For the reasons set forth below, the United States' motion is **granted**.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

In February 2003, after a seven-day jury trial, Gregory Sullivan was convicted of several counts related to the commission of bank robberies. (Docs. # 110-114, 123-125). On September 22, 2003, Sullivan was sentenced to a total term of imprisonment of 572 months by Judge Jennifer Coffman. (Doc. # 180). As part of this Judgment, the Court ordered him to pay $107,425 in restitution and a $1,400 special assessment *immediately*. (Doc. # 207 at 25). The Court allowed Sullivan to pay $25 a month towards the restitution balance. (*Id.*). On the order of the Sixth Circuit Court of Appeals (Docs. # 325 and 327), Sullivan was re-sentenced on September 10, 2015, to a total term of imprisonment of 572 months. (Docs. # 341 and 343). That Judgment required Sullivan to pay restitution in the

1

amount of $108,825 due immediately, but the Court allowed Sullivan to pay $25 quarterly, unless employed, at which point he was required to pay $60 quarterly. (Doc. # 343 at 8). As of September 9, 2021, Defendant has paid $2,489.82 towards his restitution, and therefore still owes $105,830. (Doc. # 442 at 5-9).

This matter first came to the Court's attention in November of 2021, when Sullivan sent the Court a letter regarding money being taken from his account. (Doc. # 439). In that letter, Sullivan alleged that the United States took $5,936.03 from his account on November 4, 2021. (*Id.* at 1). Ultimately, Sullivan requested that the Court order the United States to return $5,936.03 to his account. (*Id.* at 2).[1]

Thereafter, the Court ordered the United States to file a written response detailing the status of Sullivan's at-issue encumbered funds. (Doc. # 441). The United States then filed a Motion for a Turn Over Order and a Response as ordered by the Court. (Docs. # 442 and 443).

The Bureau of Prisons (BOP) allegedly informed the United States that Sullivan had substantial funds ($5,936.03) in his inmate account. (Doc. # 442 at 2). However, the United States only requested the Court to order turn over of $5,636.03. (*Id.*).

## III. ANALYSIS

Procedures and remedies for the enforcement of criminal monetary penalties are set forth in 18 U.S.C. § 3613. Section 3613(f) further provides that a restitution order can be enforced in a manner similar to a fine. Accordingly, an order of restitution "may be enforced against all property or rights to property of the person fined," subject to certain

---

[1] Thereafter, Sullivan sent another letter regarding "corrections" to the original information he provided to the Court, but it seems to only correct the name of the Assistant United States Attorney responsible for requesting the removal of funds from Sullivan's account. (Doc. # 440).

2

exemptions. 18 U.S.C. § 3613(a). Importantly here, property in the form of cash is not considered exempt from government seizure for criminal debts. *See id.* § 3613(a)(1). Under 18 U.S.C. § 3613A(a)(1), if a defendant has defaulted on payment of restitution, "the court may, pursuant to section 3565, . . . order the sale of property of the defendant, accept a performance bond, enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution."

The United States maintains that because Sullivan has defaulted on his obligations, the United States was justified in removing Sullivan's funds from his account pursuant to 18 U.S.C. §§ 3613, 3613A. (Doc. # 442 at 2). However, the United States incorrectly states that Defendant is in default of his obligation because he has been making payments on a quarterly basis. (*Id.*). Defendant is not in default, as the Court approved Defendant's request to make payments quarterly instead of monthly. (*See* Docs. # 343 and 344).

In an attempt to correct its misstatement, the United States argues that the Crime Victims Rights Act provides that "victims have the right to 'full and timely restitution.'" (Doc. # 443 at 2) (quoting 18 U.S.C. § 3771(a)(6)). The Mandatory Victims Restitution Act requires that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). "Several courts have held that § 3664(n) is self-executing" upon defendant's receipt of "substantial resources," which triggers "an automatic payment requirement." *United States v. Bazazpour*, 549 F. Supp. 3d 720, 722 (N.D. Ohio 2021) (collecting cases);

*United States v. Lassiter*, No. 13-20476, 2021 WL 486611, at *1 (E.D. Mich. Feb. 10, 2021).

Importantly, some courts disagree "as to whether § 3664(n) is applicable when a defendant's restitution order limits periodic payments to a fixed amount, in accordance with an IFRP payment schedule." *Bazazpour*, 549 F. Supp. 3d at 722; *Lassiter*, 2021 WL 486611, at *2. Here, as admitted by the United States, Sullivan's "payment scheme of this 'due immediately' obligation is consistent with the BOP's Inmate Financial Responsibility Program (IFRP) payment scheme." (Doc. # 443 at 1). Therefore, the relevant question is whether the Court's order requiring Sullivan's payment to be immediately due allows the government to take further collection action, notwithstanding Sullivan's IFRP payment schedule.

In *United States v. Bazazpour*, the United States moved the court to authorize a restitution payment from funds in the defendant's inmate trust account, even though defendant was making payments pursuant to a IFRP payment schedule. 549 F. Supp. 3d at 721-22. There, the court ultimately determined that due to the language in Defendant's judgment providing that "nothing shall prohibit the United States from executing or levying upon property of the defendant discovered," there was "nothing preclud[ing] the Government . . . from seizing the funds in Defendant's inmate trust account, which constitute a 'substantial resource' under Section 3664(n)." *Id.* at 722-23. In Sullivan's Judgment, the payment was "due immediately," with further instruction that "payment of criminal monetary penalties is due during the period of imprisonment." (Doc. # 343 at 8). However, the Court allowed for Sullivan to pay on a payment schedule which provided for "25.00 quarterly payments, unless employed, shall be $60.00 per quarter

4

during the term of incarceration." (*Id.*). The minutes of Sullivan's sentencing hearing further confirm this schedule—"the amount [to be paid] will be $25 per quarter *unless otherwise altered by subsequent order of the Court.*" (Doc. # 344 at 25) (emphasis added). In essence, the United States has moved for a one-time alteration of Defendant's restitution payment schedule due to a significant balance in his inmate trust account.[2] While Sullivan's situation is not directly analogous to the defendant in *Bazazpour*, the fact remains that when an inmate "receives substantial resources *from any source*," 18 U.S.C. § 3664(n) requires that "such person *shall be required* to apply the value of such resources to any restitution or fine still owed." (emphasis added). The Court finds that it not only has the power to alter Sullivan's restitution schedule (*see* Doc. # 344 at 25), but is also required to enforce Sullivan's statutory responsibility to apply his substantial resources to his outstanding restitution balance under § 3664(n).

Therefore, this Court can, and will, order turn over of the funds in Sullivan's inmate account to satisfy part of the restitution still due and owing in his case.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED:**

(1)   That the United States' Motion to Authorize Payment from Inmate Trust Account and for a Turn Over Order (Doc. # 442) is **GRANTED**; and

(2)   The Bureau of Prisons shall turn over $5,636.03 from Sullivan's inmate trust in payment of Sullivan's outstanding restitution balance.

---

[2]   Within the Eastern District of Kentucky, a court has allowed for the Bureau of Prisons to unilaterally change an inmate's restitution payments, explaining that "[t]he more money maintained in the account, the more an inmate will be expected to pay toward his indebtedness." *United States v. Harris*, No. 03-17, 2007 WL 2955843, at *3 (E.D. Ky. Oct. 2, 2007).

This 14th day of June, 2022.



Signed By:
*David L. Bunning*   DB
United States District Judge

M:\DATA\ORDERS\Covington Criminal\2002\02-45 Turnover Order.docx